Thank you, Your Honor, and good morning and may it please the court. My name is Doug Silverstein and I represent plaintiff and appellate Melissa Antablin. The court has detailed briefing on the issues particularly found in the reply brief. What I'd like to do is touch upon the major issues and save the majority of my time for rebuttal absent different direction or questions from the panel. Starting first with the union's position that is that the hiring hall or industry experience roster, often referred to as the IER, is merely a preference of employment in hiring and rehiring and not a requirement. The CBA speaks to this issue directly at paragraph 68C, which states the producer shall offer employment to persons within four specified classes, which includes costumers, which is the class at issue in this appeal. It goes on to state that such preference of employment in hiring and rehiring shall be given within each class first to qualified persons on the senior studio roster. And if insufficient personnel are available from that roster, then that's the only way that we get to outside any source. Mr. Silverstein, the union says that the roster, you can sign up for the roster, you can be on the roster even if you're not a union member. You just have to meet the qualifications or whatever they are, which don't include union membership. How does that affect whether this can be considered an exclusive hiring hall arrangement? Well, in order for the productions to hire non-union costumers, there needs to be a waiver granted to the production company. And the only way that you get to a waiver is if there are not available union members who are available for hiring. That's really the key issue, Your Honor. Okay. All right? So I think the key point here is that you only get to non-union individuals in the event there are insufficient qualified individuals on the IER to meet the employment needs of the producer. What this does is at a minimum would allow a reasonable jury to conclude that the IRE is an exclusive hiring hall. The court is well aware we don't need to establish that since we're here on a motion for summary judgment that has been How do you deal with the waiver argument? As I understand it, the exclusivity issue, the DFR issue, wasn't argued by the plaintiff, and I know it was a different lawyer at that point, in their summary judgment response brief. So here's how we're dealing with it. And it was argued by incorporation below in the pleadings, and it was also addressed substantively by the district court. So any suggestion that it wasn't addressed below or in the opening brief is belied by the proceedings that actually transpired and the specific incorporation of very discreet paragraphs and page numbers and argument. And the issue of the waiver is very important because that the granting of the waivers, as well as failing to advise members like Ms. Antablon of the waiver request so they could act to protect their rights, forms the basis of the breach of the duty of fair representation that supports Ms. Antablon's claims. Because there is no evidence that has been proffered by the union to justify why it was issuing waivers when, in fact, there were qualified union employees available to work. And the burden of proof never actually shifted to Ms. Antablon because of that failure to proffer that evidence. And so it creates a triable issue. Keep in mind that the waiver issue the union has argued was within its jurisdiction. So granting members of a waiver and granting a waiver is an entirely ministerial act that does not really require judgment. So regardless of which standard of duty of fair representation applies, there are triable issues. Ms. Antablon contends that it's the lower standard given the fact that the union is an exclusive hiring hall. And even if the lower standard does apply, we've still got a breach because of the ministerial action of what transpired. So your contention is that the union had to prove that it wasn't arbitrary as opposed to the plaintiff having to prove that it was arbitrary. Am I understanding that right? That is correct because of the failure to proffer evidence supporting the granting of the waivers. It simply just did it. All right. Next, I'd like to move on to the tolling issue. The key case seems to be Galindo, which is relied upon by the union and was cited by the district court. Galindo cannot justify denying tolling merely because the internal remedial process does not afford the tolling. That's important because that statement in Galindo is dictum and the cases upon which Galindo analyzed to support its proposition do not actually support that. The key issue here is that tolling is justified because of the mandatory nature of the union proceedings that Ms. Antablon pursued. The IATSE Constitution is crystal clear on this point. Again, looking at these undisputed documents, just like we did on the DFR claim and what the IATSE Constitution says is that under no circumstances shall a member resort to the civil courts until all remedies and procedures herein provided shall have been exhausted. This is an incredibly important policy consideration. If Ms. Antablon has to bring her claims through the union's internal exhaustion procedure, then there's no possible way that her claims are not told for later and subsequent civil proceedings. It would create a perverse policy that Ms. Antablon will be faced with pursuing her administrative exhaustion under the contract while having to pursue claims in court that could then be defended against on the ground that she has not pursued her internal remedies for the CBA. And so that's kind of the background because it goes to whether or not certain evidence should have been excluded or not by the district court under a statute of limitations argument if tolling did not apply. That's the background, really, to the retaliation issue, which there, regardless of how the court comes out on this, and we believe strongly that tolling did apply here for important policy considerations, there is substantial evidence in the record of actual retaliation even within the statute of limitations. So, counsel, that's what I want. So the dispute about the article and the customer would be time barred if the action isn't told. But what other evidence of retaliation supports that claim? Sure. And we specifically detailed that in our reply brief. But in summary, we identified a number of productions where the evidence is timely, starting with in Jane the Virgin, where it was disputed that the employer made statements that employees no longer worked there when there was evidence that they did, which is a contradiction of the information that was provided. On A Wrinkle in Time, Ms. Antablon controverted the employer's claim that she previously worked with Horn and that she had to be let go due to background actor reductions when, in fact, the background actor reductions had actually increased. On American Crime Story, Versace, contrary to the declarant from the production, Ms. Antablon only contacted her four times via email over a year and did not work with her most of the time for the work that she did do on the production before she was let go. That same supervisor, Supervisor Peterson, also denied Ms. Antablon had contacted her for work on The Politician. There's evidence in the record that, in fact, Ms. Antablon did. And these same types of conflicts in the evidence exist for other productions detailed in the briefing, in the reply brief for Fresh Off the Boat, On My Block, Ghosted, SWAT. And one of the most telling is on the 9-1-1 production where the costume supervisor, Mark Summers, was very hostile to Ms. Antablon, telling her, I know who you are. That is certainly evidence that a reasonable jury could conclude that there had been discussions about her related to the union and that influenced why she was not being hired on these productions. I'd also like to address, specific to your question, Judge Wardlaw, is on the causation issue, how much evidence has been proffered that does, in fact, raise a triable issue here. Ms. Antablon's very detailed declaration, much of which was not objected to and was admitted before the district court, is replete with details of hostile actions, including her being denied her right to speak, other adverse actions, lies and differential treatment. I do have the specific sites in the record, if the statements and accusations, destruction of recordings of meetings, that is especially significant because there's evidence in the record that there was a specific union meeting about Ms. Antablon that a union official stated that the tape had to be destroyed. In fact, it was destroyed. And the statement was by the union official that it was destroyed because it could create liability for the union. That type of statement that shows consciousness of guilt is exactly the type of evidence that Ms. Antablon should be able to provide to a jury for it to consider whether or not she has met her elements of these various causes of action. There's also violations of the union constitution and related false statements, denial of free speech, inconsistent and contradictory statements relating to the union refusal to defer her dues, and further animus towards her protected speech about union governance issues. So unless there are further questions regarding that issue, I'd like to briefly touch upon the various records claims and then reserve the rest of my time for rebuttal. Well, to get to the records, at this point, have all the specific records that you've requested been provided? They were produced during discovery in this case, but the issue here is whether they should have been produced without a lawsuit. We contend that they should have. And when there is this antagonistic of conduct by a union towards one of its members, that does not moot the claim because the burden should be on the union to produce the records, not on its member. What are your damages on that claim? What relief can the court afford you on that claim? So at this point, the damages are having to go through the lawsuit to actually obtain the records. So it's attorneys' fees, cost, time. And the relief that the court can afford is an order that the union is required to produce the records without having to go through a lawsuit to be sued. With that, I'd like to reserve the rest of my time for rebuttal. All right. You may do so. Thank you. All right. Ms. Dmitrovich? May I please the court? Lisa Dmitrovich of Bush Gottlieb on behalf of Motion Picture Costumers, Local 705. I'm going to address the first complaint, the issues of duty of fair rep and retaliation. My colleague will address the second complaint, the inspection claim. So the duty of fair rep we submit is not met here. There's no duty established because there's no exclusive hiring hall. The cases on hiring hall make it clear that it's about the union's ability to control the process or manipulate the process to block people from employment. The facts here simply do not support that. Union membership is not required to join the industry experience roster list. That would be unlawful to limit it to union membership. It is about having 30 days in the industry under this contract. So you get one break on one movie, on one television show. That's going to get you your 30 days so long as you're successful on that one breakthrough role. You then apply to a separate entity, the Contract Services Administrative Trust Fund. Not the union, not an employer. This third-party trust fund, they validate that you have the 30 days, and then you're on the list. It is not about union membership. The union doesn't validate it. The union doesn't maintain it. The union doesn't control it. It's their list. It's not based on seniority or anything else. Well, the union does control waivers, though, right? Well, first off, they're not waivers. That's a term that members who don't like the system use in a pejorative way. They actually are called permits, and they're permits to acknowledge that someone has a special skill. This roster will never exist if there is not an ability on projects that require special skill to hire someone with special skills. And so what happens is, say, on Marvel, those Marvel costumes are incredibly elaborate. The average costumer cannot do that work. You have to have special skills. So if someone happens to not be on the industry experience roster, what they do is that producer reaches out to the union and says, we have someone with special skills that we want to hire. Here's what their special skills are, and the union has to evaluate that. So what happens if the union doesn't grant the, you call it a permit, what happens if the union doesn't grant the permit in your example there? Then they're going to have to justify how no one is qualified on the industry experience roster. Who's the they? The producer who wants to hire them. Right, but then who makes that decision? When the producer has to justify it, then who decides whether it's justified or not? Then it goes back to the union's business record. So the union still has to make the final decision on whether to grant the permit. Well, at that point it would be an acknowledgment that there's no one qualified. Right, but they have to do something. Right, at that point those exceptions would be in the union's purview. But here there's no allegation that the union had Ms. Tablin in mind on the three productions. Now you've just morphed issues from whether it's mandatory to whether she's been discriminated against. I thought you were talking about whether it's mandatory. And it just seems to me that the fact that the union has to grant this permit or the person who has the special skills doesn't get qualified tends to suggest that it is a mandatory arrangement and not something that's just this loosey-goosey discretionary thing. Well, I think somewhere in between loosey-goosey and mandatory. I mean, it's a low threshold to get on the list. It's 30 days in the industry. So, you know, there's a lot of people on it. So most people who would have the skills you would think would be, who have special skills you would think are going to be for the most part on the list. But you're right. The permit system does come through the union and is within the union's purview. And once on the list, does a person become a member of the union if not previously a member? No, they're separate. So someone, there's many people who are in the union that aren't on this list. They do commercials, soap operas, other things. But I'm looking at it from the other direction. Yeah, no, not necessarily. They're not interconnected because it's not a requirement. Do they happen to, you know, try to become members at the same time as this is going on, as they're coming into the industry? Yes, there's certainly a correlation, but there's not a requirement. You said at the beginning, and it might have been a slip of the tongue, but you said at the beginning, number one, this is not an exclusive hiring hall. And then I think you said because it's not exclusive, there's no duty of fair representation. Did you mean that there's no duty of fair representation? As to how this system works, certainly you still owe duty of fair representation to members for purposes of once they have employment. But as far as the NLRB case law on when the duty of fair rep applies, only applies to exclusive hiring halls, not to non-exclusive hiring halls. Can I ask you kind of a really dumb and basic question about how this works? Let's forget your Marvel example with the person with the special skill. I'm running an ordinary production. I need a person with ordinary skills. There's this list. It's got union members on it. It's got non-union members on it. As a producer, can I just pick anybody I want on the list, irrespective of whether they're a union person or not? Absolutely. Okay. So where does the permit come in then from the union? So the permit comes in when you want to hire someone not on that list. Okay. So it's not as between union members and non-union members on the list. It's as between the list and off the list. Exactly. Okay. All right. So the union has an obligation with this permit system to protect not only its members on the list, but the non-members on the list. Well, I am not aware of any case that would say, if it is legally a non-exclusive hiring hall, that the duty would attach. But it's true that the integrity of the list. Maybe I'm wrong in saying duty. Let's stay away from the word duty for a moment. But the way I understand the permitting system is if a production manager wants to hire somebody not on the list, that production manager has to get a permit from the union. And that permitting process will protect anybody on the list, whether that person on the list is a union member or not, correct? That's correct. And whether or not the union has a duty to do that, why does the union do that? Where does that system come from? Is there no obligation? The union just does it because it wants to? Well, the union, I mean, most of the people on the list are members. I mean, certainly it's largely members. But the point is that, first off, this is negotiated industry-wide. You're not yet answering my question. Why does the union do this? Is it obligated to administer this permit system, or is it just doing it because it wants to? Well, it is through the collective bargaining agreement that exists. Well, it sounds like it does have a duty then. Whether they certainly have an interest in ensuring that it is enforced and maintained and has integrity to it. Whether they have the duty of fair wrap. No, you and I are not quite engaging precisely. Okay. The union administers this permit system. Correct. Does the union have an obligation to administer the permit system? That's a yes or no. I guess I'm not sure I understand the question. Well, what's not to understand? Does the union have an obligation to do what it's doing in administering the permit system, or is it just a volunteer? Is it doing it just because it wants to? No, it has negotiated this, and so it should ensure that it is. Is it part of the CBA? Yes. Does it have a duty under the CBA to administer the permit system? It has agreed that, well, what has been negotiated is that the producer has agreed to give the union notice. Either that someone has special skills, and so hire off the list, or the producer will give notice if there's no one qualified. So the union does have an obligation to. . . And the obligation comes out of the CBA, correct? Correct. So it does have a duty then to administer this permit system, and the permit system does protect anybody on the list, and it protects people on the list who are union members. That's correct. Okay. It took us a while to get there. Sorry. So having a duty to administer the permit system and to protect the union members as well as the non-union members on the list, I don't see why there's no duty of fair representation. It may be that the duty is not as high as it would be were this an exclusive hiring hall, but I would think that there's still a duty. I'm not. . . I mean, I'm not aware of a case law that would help guide this court on what that lower duty would look like, because my understanding of the analysis is that if it's non-exclusive, then there isn't the DFR. But even if there were the DFR here obligation, even if that were the standard and we didn't even go to a lower standard, the burden of proof has not been met here. First off, we would submit that this is not a ministerial determination of whether someone has special skills. That's not merely a date on a calendar. That's an analysis of what their skills are and what it takes to do the job. I think what Mr. Silverstein was arguing was the ministerial thing was not giving notice to union members that the employer is going to go off the list, and that sounds more ministerial to me. Well, there is no obligation to give notice, and we would submit that that would not be practical. One is that we would say to Demetrius that the court there said that you don't have to give notice to the membership of what proposal you're going to put across the table. Here, too, there's only a 24-hour turnaround. The notice period that the union has to evaluate and respond is 24 hours. To blast it across to the membership every time a producer wants to hire somebody would lead to lots of rancor, would lead to the system not being administered, and would lead to the next time the contract comes around that this system would disappear because it would prevent people from hiring the people they want to hire. The entertainment industry is a very fast-paced system. The costumers are just one of many, many components to hiring a production. There's all kinds of changes that happen, and all of the unions, if they want to keep this a unionized workforce, have to be nimble and responsive to needs. And so to blast it out, there's no legal obligation to do so, and we submit would also be highly impractical and would lead to the system no longer existing. I see I've exceeded my time. I did want to briefly address the retaliation point, unless you'd prefer for me to move on. Okay, you can address it. Okay. So we would simply submit that no tolling exists. We would encourage the court to decline the invitation to call Galindo on bonk. It's been around since 1986. The entire unionized labor force is familiar with it. It's worked fine. And as to the evidence of retaliation that was cited, Jane the Virgin is outside of the statute of limitations period. The other ones we submit, even if you can quibble with some aspects of what the employer statements stated, and we submit that there's no actual lies there, but even if you could quibble with it, there's no genuine issue of material fact. And none of it connects the union to any costumer with hiring authority, and that there's no evidence that's been proffered. There's no dispute of fact as to whether the union reached out to anyone. All we have is her speculation and conjecture. Let me ask you this about that, and I'll try to put it in the simplest way I can. So you've got all these affidavits out there from the producers saying nobody from the union contacted me, and that's there. I get that. What I understand the argument on the other side to be is that, well, that same affidavit from that same producer said these other things, which we can prove were not true because there's contrary evidence. And it's kind of standard in jury instructions, for example, that we tell jurors that if you don't believe one thing somebody says, you don't have to believe anything they say. So why wouldn't the evidence that there were false statements made about other things cast doubt on the direct statements about contact from the union? Well, I would say first you don't even get there because you have to – she has to show that the union retaliated against her. So there's no evidence that the union retaliated against her. Isn't that circumstantial evidence, though, that all of these employers are not hiring her for all these reasons related to difficulty of working with her? Right. But I'm not aware of circumstantial evidence being sufficient to prove retaliatory action as opposed to the causation element of the retaliation. So even if – so, yes, circumstantial evidence, you're correct, could not be used to prove retaliation. But even there, if you look closely at each one, there's not something to say that actually it's not credible. So, for example, in The Wrinkle in Time, all Ms. Entablen says is that she doesn't recall working on Zodiac many years ago. She didn't say she didn't work on Zodiac. Also, she says that, oh, actually the background number increased. But she doesn't submit any earlier call sheets like she does the later ones to show that the background numbers actually did go up or down. There's not actually the evidence. In Versace, she does admit that she contacted four times. I'm sure that if you had someone apply for you as a law clerk and contact you four times about it, you would be – that person would stand out to you. I mean, that's a certain behavior. And 9-1-1, even if someone said, I know who you are, which she denied, there's no connection that I know who you are because of the union. She has been a costumer for over 30 years. Let me go back for just a moment. You might or might not have intended to say it this way, but I heard you say that circumstantial evidence cannot be used or is not enough to prove retaliation. Do you mean to say that? The second prong, the retaliatory conduct. Even if the circumstantial evidence is really, really strong, it's not enough? That's my understanding of the current case law of the circuit, that that's not enough, that you can use – there's some argument you can use circumstantial evidence for the third prong. Where do you draw the line between retaliatory conduct and causation? Because those, generally speaking, merge, don't they? I did this because of – I mean, that's all kind of one big ball of wax. Right, but you have to always have that – there has to be evidence that something was done. Now, whether or not it was for the purpose of retaliating. But it's the rare case – I mean, I think I've seen one in 23 years as a district judge. It's the rare case where somebody says, I did this because you are blank. Right, right. It's always circumstantial evidence. So if it's not circumstantial evidence, I've let a bunch of cases go to trial that shouldn't. Right, but is there – I would imagine you haven't let cases go to trial where it's not clear that anything was ever done. I didn't get the job. I mean, that's the – that's – Right, but there's no evidence that – I mean, why would – Finish the sentence. There's no evidence that that's because of – that's causation. That's the whole point. There's no evidence the union took any steps. There's no evidence that the union did anything, that three different administrations did anything. She hasn't experienced any decrease in hours. If you look at her hours or days worked between 2011 and 2015 to after the conduct, 2016 to 2019, there's not a decrease. There's not – the idea that these three different administrations who are not aligned with each other all took it – made it their mission to somehow have telepathic knowledge of where she's applying to by email to and somehow intervened to block it, it is very extreme to say – I certainly wouldn't call that strong circumstantial evidence, but you have to show that they took steps. Now you're talking something that I can understand. You're saying that the evidence isn't very strong, but I resist the idea that circumstantial evidence, no matter how strong, can never be used to prove that. Okay. Well, I guess we are in common ground that there is not sufficient evidence here to send someone to trial. You're just saying the circumstantial evidence isn't strong enough. That's a different argument. And there's nothing here that should have caused the trial court to send it to trial. All right. Thank you. Well exceeded your time, and we'll hear from your partner on the documents question. Good morning, Your Honors. Thank you for your forbearance in letting us split the issues this way. I think Your Honor asked the right question. What's the remedy here now that the documents have been provided? In a Section 201c action, you're looking for declaratory relief. You're looking for injunctive relief. The district judge asked exactly the same question repeatedly at the motion for summary judgment hearing of prior counsel. The transcript is in the record, particularly around page 636. There's a lot of discussion. What's the remedy going to be? There's never really a satisfactory answer because injunctions, you know, an injunction would tell the union to actually do something. What are we going to do at this point? We've given the documents, and just a minor correction, the documents were not all provided in discovery. They were all provided, but some were provided or committed to be provided prior to the lawsuits being filed. Some were provided without needing a discovery request, and then were actually provided again in discovery,  but I think in the mootness cases, the common thread or the common question is whose court is the ball in? When you have a defendant who has taken some action and therefore says, well, now the case is moot, what are we concerned about happening if judgment is then entered for the defendant? In the classic environmental cases like laid law, you have a polluter. Well, they can just turn the pollution back on after the judgment. That's what we're worried about. Here, there's no policy. There's no practice implying a policy. What I heard in an oral argument was, well, attorneys' fees. How do you respond to that? Well, so there's no catalyst theory. So you don't get attorneys' fees just for filing a lawsuit and then, you know, and that prompts them. You often don't get attorneys' fees even if you win. Right, only if you win. Well, no, even if you win, you sometimes don't get attorneys' fees. It depends on if there's a fee statute or some other basis. I mean, just because you win the lawsuit doesn't mean you get fees. To be fair, this claim does have attorneys' fees attached to it. Okay. But it is a prevailing party, attorneys' fees. So there's got to be some prevailing here. So there's got to be some judgment that's going to be entered against the union. And without a case of controversy, there's no judgment that can be entered constitutionally. Well, but if there is an entitlement to fees, then we've got catalyst, right? I'm sorry? Then we've got the catalyst theory. So why is there no catalyst here? It's just case law. I think in the Supreme Court, but at the very least in the circuit, LMRDA cases, there's not the catalyst theory. And I think there's briefing. I don't know if there's briefing on that before this court, but it was briefed in summary judgment. So I think the remedy is the right way to look at this. Is there something for the union that will worry the union is going to restart is the right way to look at this. And I think we see the plaintiff sort of acknowledging the fact that she's got to identify some policy or some practice or some ongoing union action by trying to recharacterize her claim both at the summary judgment argument and in briefing here as a policy by pointing to how the union hasn't acknowledged her right to certain things or hasn't acknowledged that it can't delay. That's essentially turning our litigation positions into a union policy. And that's just not – the law doesn't really support that. There's got to be some evidence of that. And after full discovery, after multiple depositions, after all of these things, there's no evidence here of any union policy to delay, of any union policy to not give copies of any union policy in any of the areas. And so what plaintiff winds up seeking is an advisory opinion. Please declare that a certain amount of delay is unlawful. And that's just divorce from any remedy that she could get. That's divorce from the facts on the ground at this point. It's divorce from the case of controversy. And I think the FOIA cases are also very instructive on this, that really take a hard differentiation between a single request, which is what this case is, or challenge of a policy of denial of a particular category of document always and all the time. And those aren't mooted by providing the documents. So if there were some evidence of some policy here, we'd be in a different place, but there isn't. Unless there's questions. Thank you, Counsel. Thank you. Mr. Silverstein, you had some time left. Thank you very much, Your Honor, and thanks to the panel for the excellent questions, which helped focus and significantly shorten any rebuttal. On the DFR and exclusivity issue, it's clear that it's not, that the issue of hiring is completely under the union's control. Union membership is not required, and who runs the hall is not determinative. Judge Fletcher, you asked some questions that made clear whether there was a duty, and the union has an obligation to administer, whether we call it the waiver or permit system. If the IER lists multiple qualified costumers, then the employer is free to select from them without regard to seniority or union status, but can only hire off-list if the IER contains no qualified individuals. So I think that's the key issue. On the retaliation, certainly circumstantial evidence is sufficient. I've always been troubled by the union's positioning on this, and I'd be out of business if direct evidence was required on these types of claims. And then finally, on the documents, I think the concern here is that if the union can get away with not meeting its legal obligation and then subsequently doing it in a lawsuit with the production of documents, that it encourages it to do that rather than actually produce the documents as the federal statute requires it to do. The bottom line on this case from appellant's position is that there are facts upon which a reasonable jury could find for misentablant, and we respectfully request that the court reverse the district court's summary judgment ruling. Thank you very much, unless there are other questions. Thank you, counsel. Anteblend v. Motion Picture of Customers, Local No. 705 is submitted. We previously submitted CFPB v. Nish-Shade-Watt, and this session of the court is adjourned for today. Thank you very much. All rise. This court for this session stands adjourned.
judges: WARDLAW, FLETCHER, Kennelly